UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DARRIN BUCHTA, on behalf of himself And all other similarly-situated,** ) ) ) **Plaintiffs,** ) ) ) v. ) ) **AIR EVAC EMS, INC., D/B/A AIR EVAC LIFETEAM,** ) ) ) ) **Defendant.** ) | Case No. 4:19-cv-976 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This lawsuit concerns the manner in which Air Evac EMS, Inc. ("AEL" or "Defendant") calculated overtime for (i) its pilots, mechanics, flight nurses and flight paramedics in Illinois between April 24, 2016, and July 7, 2018,[1] and (ii) its flight nurses and flight paramedics in West Virginia between April 24, 2017, and July 7, 2018.  Specifically, Darrin Buchta – a former Illinois flight paramedic – seeks to recover unpaid overtime on his own behalf and on behalf of a class of Illinois pilots, mechanics, flight nurses and flight paramedics under Illinois statutory and common law, and on behalf of a class of West Virginia flight nurses and flight paramedics under West Virginia statutory and common law.  As addressed below, AEL is entitled to summary judgment for the following reasons:

*First*, Buchta's individual and class claims in Counts I and II are barred by the class settlement in *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-00615-DCR.  Buchta was a Settlement Class Member in that matter, pursuant to which he and all the other Settlement Class Members released

---

[1]     On July 8, 2018, AEL ended the pay practice at issue in this case, and began paying pilots, mechanics, flight nurses and flight paramedics in Illinois and West Virginia overtime for all hours worked in excess of 40 hours in a single workweek.

1

"any and all claims they have or may have against [AEL] arising out of or relating to the manner in which they were compensated by [AEL] [prior to April 24, 2019]" pursuant to a settlement agreement that was approved by the Court.  They also agreed to release AEL from any and all claims they have or may have against AEL arising out of or relating to any (1) failure to pay overtime; (2) failure to pay wages; (3) unjust enrichment . . . ."  Thus, he cannot now bring a lawsuit against AEL on his own behalf or on behalf of others alleging violations of state wage laws (Illinois or West Virginia) or alleging unjust enrichment.

*Second*, if Buchta gets past the first argument, then:

- His <u>class claims</u> in Counts I and II on behalf of flight nurses and flight paramedics in West Virginia fail because those employees are exempt from West Virginia wage laws, and thus not entitled to the overtime pay they seek. More specifically, flight nurses and flight paramedics are "assigned to perform duty in the aircraft during flight time," and thus the U.S. Department of Transportation ("DOT") has authority to regulate the activities of AEL's flight paramedics and flight nurses.[2]

- AEL is entitled to summary judgment as to any Illinois pilot, mechanic, flight nurse and/or flight paramedic who did not work in excess of 40 hours in any workweek between April 24, 2016 and July 7, 2018 ***on the ground*** within the State of Illinois.  As explained, Illinois wage laws do not apply extraterritorially (including work in other states or in federal airspace), which means employees must work over 40 hours on the ground in Illinois in order to be entitled to an overtime premium.  AEL's pilots, flight paramedics, and flight nurses based

---

[2] This argument also requires the denial of Plaintiff's Motion to Intervene and to Amend, which was filed to add Ian Carroll as a second named plaintiff. [Doc. # 35]. Carroll worked only in West Virginia, and asserts claims under West Virginia law.  Because the West Virginia claims must be dismissed, as explained below, Carroll cannot allege he is entitled to any relief from AEL and cannot maintain an action on his own behalf. Without being able to establish standing for a claim on his own behalf, he cannot seek relief on behalf of a class. *Sanzone v. Mercy Health*, 326 F. Supp. 3d 795, 809 (E.D. Mo. 2018).

in Illinois spend time in the federal airspace and on the ground in other states. Thus, Defendant is entitled to summary judgment on Plaintiff's Illinois claims for all employees who did not work more than 40 hours on the ground in Illinois in a workweek.

## FACTUAL BACKGROUND[3]

### A. AEL's Background.

AEL is an air ambulance company providing air medical transport services via helicopter to critically ill or injured patients in medically underserved rural areas. SOF ¶¶ 1, 6. AEL operates under Part 135 of the Federal Aviation Regulations ("FARs") pursuant to a license issued by the Federal Aviation Administration. SOF ¶¶ 2, 5. AEL also has a license to operate under Part 298 of the FARs as an air taxi operator. SOF ¶¶ 3. AEL's air ambulances are staffed with one pilot, one flight paramedic, and one nurse. SOF ¶ 7.

### B. Duties and Pay of AEL's Flight Crewmembers.

AEL's flight paramedics and flight nurses are assigned to perform duties in the aircraft during flight time. SOF ¶ 7. Specifically, they provide advanced life support care to critically injured or ill patients from initial contact and during flight time on the air ambulance until care is relinquished at a hospital (including assessing and monitoring vital signs and mental status), complete documentation, communicate with health care professionals on the ground and AEL's communication center, and assist pilots with radio, navigation, and visual observation activities – all while in the air. SOF ¶¶ 8-9. AEL's pilots, flight paramedics, and flight nurses start their shift at the base to which they are assigned. SOF ¶ 11. However, they will spend time in the airspace and/or in other states different from that in which they are based during their shift. SOF ¶¶ 12-14.

---

[3]   Citations to AEL's Statement of Uncontroverted Material Facts are referred to herein as "SOF ¶ __."

Prior to July 8, 2018, AEL paid its pilots, flight paramedics, flight nurses, and mechanics in Illinois and West Virginia overtime premiums after 84 hours in a two-week pay period. SOF ¶ 15. Since July 8, 2018, AEL has paid its pilots, flight paramedics, flight nurses, and mechanics in Illinois and West Virginia overtime for time worked over 40 hours in a workweek. SOF ¶ 16.

### C. Plaintiff's Employment with AEL.

AEL hired Plaintiff on June 10, 2013 as a flight paramedic. SOF ¶ 17. Plaintiff worked for AEL in Indiana, Kentucky, Missouri, and Illinois. SOF ¶ 19. On March 4, 2020, Plaintiff voluntarily resigned from his employment with AEL. SOF ¶ 18.

### D. Plaintiff's Settlement and Release of Claims Against AEL as a Settlement Class Member in the *Peck* Lawsuit.

On October 15, 2018, Jason Peck filed a lawsuit against AEL in Kentucky state court alleging AEL's pilots, flight paramedics, and flight nurses were not paid overtime in accordance with Kentucky wage laws. SOF ¶ 21. That suit was settled when the parties entered into a settlement agreement, which was approved by the Court on January 21, 2020, and provided that class members were releasing "any and all claims they have or may have against [AEL] arising out of or relating to the manner in which they were compensated by [AEL] [prior to April 24, 2019]," including claims relating to (1) failure to pay overtime; (2) failure to pay wages; (3) unjust enrichment; (4) Kentucky revised Statutes; and/or (5) any claim that was or could have been asserted in the *Peck* action. SOF ¶¶ 23, 26, 35. Plaintiff Buchta was a class member in the *Peck* action, was provided notice of the settlement, and did not opt out of the settlement. SOF ¶¶ 24, 30, 33.

### E. Plaintiff's Involvement in the Instant Litigation.

Plaintiff filed his lawsuit against AEL on April 24, 2020 – shortly after the settlement agreement was filed in the *Peck* case – alleging claims under Illinois, West Virginia, and Indiana

4

laws. [Doc. # 1]. AEL filed a partial Motion to Dismiss, and the Court dismissed Plaintiff's Indiana clams and dismissed his West Virginia claims as to pilots and mechanics only. [Doc. # 8, 9, 24].

### F.  Ian Carroll's Employment with AEL and Involvement in the Instant Litigation.

AEL hired Ian Carroll as a flight nurse on February 16, 2009. SOF ¶ 39. He became a flight nurse on October 15, 2017. SOF ¶ 40. Ian Carroll is currently employed by AEL and has been employed by AEL in West Virginia only. SOF ¶ 41. On February 21, 2020, Plaintiff Buchta and Ian Carroll filed a Motion to Intervene and Motion to Amend, in order to add Ian Carroll as a plaintiff to Buchta's lawsuit. [Doc. # 35].

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), "[s]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D & M, L.L.C*., 606 F.3d 513, 518 (8th Cir. 2010).  To avoid summary judgment, the plaintiff must do more than simply show that there is some metaphysical doubt as to the material facts, but must instead come forward with specific facts showing that there is a genuine issue for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  Where the record taken as a whole could not lead a rational trier of fact to find for the plaintiff, summary judgment should be granted. *Id.*

Moreover, to the extent that AEL is entitled to summary judgment as to Buchta's individual Illinois claims (and as to Ian Carroll's individual West Virginia claims if he is allowed to intervene), then AEL is likewise entitled to summary judgment as to all class claims.  It is well-established that at least one named plaintiff must have standing in order to maintain a class action. *Alleruzzo v. SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017). "In class action litigation, the named plaintiffs purporting to represent a class must establish that they, personally, have standing

to bring the cause of action. If the named plaintiffs cannot maintain the action on their own behalf, they may not seek such relief on behalf of the class." *Sanzone v. Mercy Health*, 326 F. Supp. 3d 795, 809 (E.D. Mo. 2018). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

## ARGUMENT

### A. Plaintiff's Claims Are Barred Because He Was a *Peck* Settlement Class Member.

The doctrine of res judicata precludes the relitigation of a claim on grounds that were raised or could have been raised in a prior action. *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990); *Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers*, 290 F.3d 1049, 1052 (8th Cir. 2004). Where, as a here, a class member of a previous class action brings a new lawsuit against the same defendant under the same set of factual circumstances, and the first lawsuit ended in a final judgment incorporating a class action settlement, the elements of res judicata are met. *See Frankle v. Best Buy Stores, L.P.*, No. 08-5501 (JRT), 2015 WL 506265, at *2-3 (D. Minn. Feb. 6, 2015). Class members have had a full and fair opportunity to litigate their claims when they have received fair and adequate notice of the settlement and their ability to opt out. *Id.*

The Eighth Circuit has affirmed the notion that lawsuits brought by class members, where the claims are similar and where the previous class action resulted in a settlement, should be barred. *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187 (8th Cir. 1993); *Berardinelli v. Gen. Am. Life Ins. Co.*, 357 F.3d 800 (8th Cir. 2004). In *Berardinelli*, a plaintiff brought a lawsuit against an insurance company. 357 F.3d at 802. The plaintiff was a class member in an earlier lawsuit against the same company, which resulted in settlement and a release of all claims "connected with, or arising out of, or related to, in whole or in part, the Policies[,]" which included the insurance policy

6

on which the new lawsuit was based. *Id.* The court noted that in class actions, there are additional requirements of res judicata, including showing that a class member received due process, i.e., adequate notice. *Id.* at 804. The court examined the release language in the notice sent to class members and held that the plaintiff received proper notice, could have opted out, and chose not to do so. *Id.* Accordingly, her new lawsuit was barred by the prior judgment and settlement. *Id.* at 804. Similarly, in *Thompson*, the court found that the plaintiff had proper notice of a settlement and release of all claims related to certain investments. 992 F.2d 187. She had an opportunity to opt out of the prior class action settlement, but did not. *Id.* Thus, she was bound by the final judgment related to the settlement and was enjoined from bringing a new lawsuit related to the investments. *Id.*

District courts have likewise granted summary judgment under similar circumstances. In *Gerdts v. SmithKline Beecham Corp.*, plaintiffs filed a lawsuit against a defendant in the U.S. District Court for the District of Minnesota alleging various common law claims as a result of the use of a prescription drug. No. 04-3500 (MJD/SRN), 2008 WL 191290, at *1 (D. Minn. Jan. 23, 2008). During the litigation, a circuit court in Illinois approved a settlement between the same defendant and a nationwide class based on claims regarding the same prescription drug (the *Hoorman* litigation). *Id.* In the *Hoorman* settlement, the class members released all claims that were "asserted or could have been asserted in [the first] case arising out of or relating to economic damages suffered as a result of [the prescription drug]." *Id.* The court found that the *Hoorman* settlement barred all *Hoorman* class members from asserting claims against the defendant related to the prescription drug, and granted summary judgment for the defendant on the class members' claims. *Id.* at *5.

7

Similarly, in *G&K Servs. Co. v. Bill's Super Foods, Inc.*, a defendant asserted counterclaims related to "phantom charges" (fraudulent or erroneous overcharges), while another lawsuit against the same entity in Alabama state court had ended in a settlement and release of all claims related to "ancillary charges." No. 3:08CV00048 SWW/JTR, 2009 U.S. Dist. LEXIS 85256, at *43, *60 (E.D. Ark. Aug. 19, 2009). The U.S. District Court for the Eastern District of Arkansas granted summary judgment on the defendant's counterclaims that were "substantively the same" as the claims asserted in the Alabama class action that accrued during the settlement class period. *Id.* at *60-61.

Here, the U.S. District Court for the Eastern District of Kentucky issued a final order approving the *Peck* class action settlement. SOF ¶ 35. The *Peck* settlement agreement provides in relevant part as follows:

> 33.    **Release By Settlement Class Members.** In exchange for the consideration provided herein, **the Settlement Class Members, including Named Plaintiff, hereby release any and all claims they have or may have against the Released Parties arising out of or relating to the manner in which they were compensated by the Released Parties up to the date they sign the Agreement**.[4] They also agree to release the Released Parties from any and all claims they have or may have against the Released Parties arising out of or relating to any (1) failure to pay overtime; (2) failure to pay wages; (3) unjust enrichment . . . . By entering into this release, it means that they forever release and settle each and all of the Released Claims described in this paragraph and each of the claims pursued in the Action, and that they forego any right to recover any wages, overtime wages, interest, penalties, civil penalties, and/or entitlement to reimbursement. Further, the Released Claims include all claims made in the Action. This release also means they cannot and will not pursue any remedies in the Action. They also agree that this release of the Released Claims extends not only to AEL, but also to its subsidiaries, related companies, parents, successors, assigns, current and former managers, employees, owners, officers, directors, and agents. If any term or

---

[4] The Class Members did not all sign the Agreement. Paragraph 86 of the Agreement specifically provides: "**Not All Class Member Signatures Are Required.** Because the eligible Class Members are numerous, it is impossible or impractical to have each one execute this Agreement. Signatures of the Named Plaintiff shall bind all Class Members. The Notice of Settlement will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Class Member."

> provision of the Agreement is determined to be unenforceable, they agree that the remaining terms will remain binding and in full force and effect.

SOF ¶ 26 (emphasis added).  There can be no dispute that the Settlement Agreement clearly includes a release of all compensation-related claims, including the claims asserted by Buchta in this lawsuit.

Likewise, there can be no dispute that Buchta received fair and adequate notice of the settlement and the ability to opt out.  The notice provided to the *Peck* Settlement Class Members, including Buchta, stated:

> **A.     Released Rights and Claims**
> Upon the final approval by the Court of the Settlement, all Class Members who do not submit a valid and timely Opt-Out Statement (as described below) agree to release any and all claims they have or may have against AEL, and their past and present subsidiaries, related companies, affiliates, parents, predecessors or successors, assigns, current and former officers, directors, shareholders, employees, attorneys, agents, insurers, and re-insurers, heirs and estates (the "Released Parties") arising out of or relating to the manner in which they were compensated by the Released Parties up to (the date of preliminary approval). They also agree to release the Released Parties from any and all claims they have or may have against the Released Parties arising out of or relating to any (1) failure to pay overtime; (2) failure to pay wages; (3) unjust enrichment; and/or Kentucky Revised Statutes, including but not limited to KRS 337.285 *et. seq.* By participating in this Settlement, it means that they forever release and settle each and all of the claims described in this paragraph and each of the claims pursued in the lawsuit, and that they forego any right to recover any wages, interest, penalties, civil penalties, and/or entitlement to reimbursement.

SOF ¶ 31.  This notice adequately explained that the *Peck* class members, including Buchta, could not bring a lawsuit against Defendant "arising out of or relating to the manner in which they were compensated by the Released Parties." SOF ¶ 31.

After receiving notice of the *Peck* settlement, Buchta did not opt out. SOF ¶ 33. Thus, Buchta is bound by the *Peck* settlement release and the Court's final order in *Peck*, incorporating the settlement and release. As a *Peck* Settlement Class Member, he is barred from bringing any claims against AEL related to his wages.

Because Buchta, the only named plaintiff in this action, cannot maintain the action on his own behalf, he also may not seek relief on behalf of the class. *See Sanzone*, 326 F. Supp. 3d at 809 In *Great Rivers Coop. v. Farmland Indus.*, the only named plaintiff's securities fraud claim was barred by the statute of limitations. 120 F.3d 893, 899 (8th Cir. 1997). The court noted that "[i]nherent in Rule 23 is the requirement that the class representatives be members of the class." *Id.* The plaintiff was not and could not be a class member because his claim was time barred, and consequently, he could not represent the class. *Id.* Since he was the only named representative, the court found the class lacked a representative, could not be certified, and the class claim could not survive. *Id.* Ultimately, the Eighth Circuit upheld the dismissal of both the individual and class claim. *Id.* Accordingly, AEL is entitled to summary judgment on all of Buchta's individual and class claims.

**B.    Flight Nurses and Paramedics Employed by Defendant are Exempt from West Virginia Wage Laws.**

**1.    Plaintiff's West Virginia Wage Law Claim in Count I Fails**

As this Court framed the issues in its September 18, 2019 Order, the determinative question is as follows: "whether flight paramedics and flight nurses are 'assigned to perform duty in the aircraft during flight time[]' within the meaning of 14 C.F.R. § 1.1, and consequently, if they are exempt from West Virginia wage laws." [Doc. # 24].   That is because employees "with respect to whom the DOT has statutory authority to establish qualifications and maximum hours of service" are exempt from West Virginia wage laws. W. Va. Code § 21-5c-1(e)(17). This Court recognized that "[t]he Federal Aviation Administration ("FAA"), a subdivision of the DOT, has authority to

prescribe 'regulations in the interest of safety for the maximum hours or periods of service of . . . employees of air carriers[.]' 49 U.S.C. §§106(a), 44701(a)(4)." [Doc. # 24].[5]

More specifically, the FAA has the authority to regulate certain crew rest obligations and hours of service requirements of air ambulance operations. *See, e.g.,* 14 C.F.R. §§ 135.263, 121.377, 135.271. "The [FAA], as the agency responsible for administering federal safety regulations [to air carriers] generally, provides air ambulance safety authorizations." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 757 (4th Cir. 2018); *see also Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1069 (10th Cir. 2019) (noting that "Congress expanded the DOT's authority to regulate air ambulances" by passing the FAA Reauthorization Act of 2018).

As this Court noted, the DOT has created regulations restricting the maximum hours of service for "flight crewmembers." [Doc. # 24]. A crewmember is "a person assigned to perform duty in an aircraft during flight time." 14 C.F.R. § 1.1. This Court recognized that since the applicable statutes and regulations do not define "duty," we must resort to the common or dictionary meaning of the term. [Doc. # 24] (citing *Johnson v. U.S.*, 559 U.S. 133, 138 (2010)). A "duty" is defined as "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." *See* Webster's Third New International Dictionary 705 (2002); [Doc. # 24].

There is no dispute that AEL flight paramedics and nurses are assigned to perform and do perform duties in the aircraft during flight time, including providing life support care to the patient in the helicopter and assessing and monitoring vital signs and mental status; preparing documentation relating to the care being provided to the patient in the helicopter; communicating

---

[5] AEL operates under Part 135 of the Federal Aviation Regulations ("FARs"), 14 C.F.R. § 135, et seq., pursuant to a license issued by the FAA authorizing it to operate as an air carrier. SOF ¶¶ 2, 5. In addition, AEL has a license to operate under Part 298, 14 C.F.R. Part 298, as an air taxi operator. SOF ¶ 3.

11

with nurses, doctors and other medical professionals at a medical facility concerning the patient; communicating pertinent patient and aircraft safety information to the Communication Center; and providing pilot assistance during flight time, such as radio, navigational and visual observation activities, when needed. SOF ¶¶ 7-9.[6]

Clearly, AEL flight paramedics and nurses are assigned to perform duties in an aircraft during flight time. Thus, they fall under the definition of "crewmember." Because the DOT has the authority to establish qualifications and maximum hours of service for such crewmembers, flight paramedics and nurses are exempt from West Virginia wage laws. Accordingly, the Court must grant summary judgment on Plaintiff's West Virginia wage law claims.

### 2. Plaintiff's West Virginia Unjust Enrichment Claim in Count II Fails

In Count II, Plaintiff brings a claim of unjust enrichment, but does not allege under which state's common law he is bringing the claim. Presumably, Plaintiff brings a West Virginia unjust enrichment claim on behalf of the West Virginia class members. To state a cause of action based on a theory of unjust enrichment in West Virginia, a plaintiff must prove the defendant retained money or benefits which in justice and equity belong to the plaintiff. *Am. Heartland Port v. Am. Port Holdings, Inc.*, 53 F. Supp. 3d 871, 879 (N.D.W.V 2014) (citing *Dunlap v. Hinkle*, 173 W. Va. 423 (1984)). The elements of an unjust enrichment claim under West Virginia law are "(1) a benefit conferred upon the defendant, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such

---

[6]  Judge Fleissig tangentially addressed the issue of whether flight paramedics perform job duties in the air, when she noted that an AEL flight paramedic's job duties "undisputedly bear more than a tenuous, negligible, and remote relationship to Air Evac's transportation activities." *Riegelsberger v. Air Evac EMS, Inc.*, 369 F.Supp.3d 901, 908, n.2 (E.D. Mo. Feb. 26, 2019); *see also McKinley v. Med-Trans Corp.*, No. 10:09-CV-861, 2010 WL 11530302, at *5 (E.D. Tex. Aug. 4, 2010) (finding that a flight paramedic's work performing patient care and activities related to the operation of the helicopter are related to transportation activities). Flight paramedics and flight nurses perform similar duties in the air ambulance, thus flight nurses also perform job duties related to AEL's transportation activities. SOF ¶¶ 7-9.

circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *CSS, Inc. v. Herrington*, 306 F. Supp. 3d 857, 882 (S.D.W.V. 2018).

Here, Plaintiff's unjust enrichment claim is premised on the same alleged failure to pay overtime as his West Virginia wage law claim. Because the class members are not entitled to overtime under West Virginia wage laws, AEL has not retained any money or benefits that belong to the class members. Thus, because the West Virginia wage law claim fails, the unjust enrichment claim also fails and the court must grant summary judgment on Plaintiff's West Virginia unjust enrichment claim.

**C.    Defendant is Entitled to Summary Judgment for any Class Members Who Did Not Work Over 40 Hours in a Workweek <u>on the Ground in the State of Illinois</u>.**

**1.  Plaintiff's Illinois Wage Law Claim in Count I Fails**

Illinois statutes apply only to conduct within Illinois unless the statutory language expressly provides for out-of-state application. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005) (holding the Illinois Consumer Fraud and Deceptive Business Practices Act did not apply out-of-state because a statute has no extraterritorial effect unless explicitly stated).  The Illinois Minimum Wage Law states that it applies only to "places of employment in the State of Illinois"; it does not apply to work performed extraterritorially.  *Wooley v. Bridgeview Bank Mtg. Co. LLC*, No. 14 C 5757, 2015 WL 327357, at *2 (N.D. Ill. Jan. 23, 2015) (quoting 820 ILCS § 105/2).  For these reasons, the *Wooley* court held that the Illinois Minimum Wage Law did not apply to employees who worked in Kansas, despite the employer's Illinois location. *Id.* at *3.  Similarly, in *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998), the Seventh Circuit held that the Illinois Wage Payment and Collection Act did not apply where the plaintiff did not perform the work in Illinois.

13

In *Hirst v. Skywest, Inc.*, the Court considered whether the Illinois Minimum Wage Law applied to time worked by SkyWest flight attendants outside the State of Illinois. No. 15 C 02036, 2016 WL 2986978 (N.D. Ill. May 24, 2016). The court concluded it did not, holding as follows:

> A claim based on the IMWL must be based on work performed in Illinois. Because the IMWL is designed to protect employees within the State of Illinois only, it does not apply extraterritorially, meaning it only protects employees located within Illinois and only applies to conduct occurring in Illinois. State laws—federal laws, too, for that matter—presumptively lack extraterritorial reach. When a statute gives no clear indication of an extraterritorial application, it has none. Thus, to state a claim under the IMWL, the plaintiffs must not only allege that they were not adequately compensated for hours worked in a given workweek but also must allege that the plaintiffs worked those hours in Illinois.

*Id.* at *8 (internal quotations omitted). Of particular interest, the Court further held that:

> To track hours worked within a particular state, moreover, another problem would have to be addressed. On what basis would work at 35,000 feet constitute work within the state of Illinois? The state has no sovereignty over the skies above it. There is no "State of Illinois" airspace, only national airspace. See 49 U.S.C. § 40103(a) ("The United States Government has exclusive sovereignty of airspace of the United States."). Arguably, then, virtually none of the flight time worked by the plaintiffs can be said to have occurred within Illinois. *Id.* at *15, n.13.

Simply put, the IMWL applies only to hours worked on the ground in the state of Illinois.

Due to the nature of the job, which includes flying in an air ambulance from an assigned base to a hospital, accident, or other event, AEL employees may begin a trip in Illinois, spend time flying in the airspace, then land in another state where they will spend time on the ground. SOF ¶¶ 12-14. It is also possible that AEL employees may respond to an emergency in Illinois, but transport the patient to a hospital in another state. SOF ¶¶ 12-14. While they are in the air and while they are on the ground in other states, the IMWL does not apply to AEL employees. If a class member did not work over 40 hours per week on the ground in the state of Illinois, then they are not entitled to recover overtime pay under Illinois wage laws. Thus, Defendant is entitled to

summary judgment on Plaintiff's Illinois statutory claims as to all class members for any workweeks where the class member did not work over 40 hours on the ground in Illinois.

### 2. Plaintiff's Illinois Unjust Enrichment Claim in Count II Fails

Plaintiff also brings an unjust enrichment claim, presumably under Illinois wage law on behalf of the Illinois class members. To state a cause of action based on a theory of unjust enrichment in Illinois, a plaintiff must prove that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Cleary v. Philip Morris*, 656 F.3d 511, 516 (7th Cir. 2011). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517 (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)).

Here, Plaintiff's unjust enrichment claim is premised on the same alleged failure to pay overtime as his Illinois wage law claim. Thus, for any workweeks where a class member did not work over 40 hours on the ground in Illinois and their Illinois wage law claim fails, AEL is also entitled to summary judgment on the unjust enrichment claim.

### CONCLUSION

For the foregoing reasons, Defendant Air Evac EMS, Inc. respectfully requests this Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims, award Defendant its costs and attorneys' fees, and for such other relief as the Court deems just and proper.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*/s/ Rodney A. Harrison*
Rodney A. Harrison, #44566MO
Mallory S. Zoia, #70377MO
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3960
rodney.harrison@ogletree.com
mallory.zoia@ogletree.com

Attorneys for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court on the 19th day of March, 2020, which sent electronic notification to all counsel of record:

J. Robert Cowan, Esq.
Cowan Law Office, PLC
2401 Regency Road, Suite 300
Lexington, Kentucky 40503
kylaw@cowanlawky.com

Charles W. Arnold, Esq.
Christopher D. Miller, Esq.
Arnold & Miller, PLC
401 West Main Street, Suite 303
Lexington, Kentucky  40507
carnold@arnoldmillerlaw.com
cmiller@arnoldmillerlaw.com

Attorneys for Plaintiff

*/s/ Rodney A. Harrison*
An Attorney for Defendant

42143796.1